# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:18-CV-00174-KDB

| | |
|---|---|
| CHRISTOPHER ALLAN RODDEY, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner, Social Security Administration,[1] <br><br> Defendant. | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff Christopher Allan Roddey's Motion for Summary Judgment (Doc. No. 9) and Defendant's Motion for Summary Judgment (Doc. No. 11), as well as the parties' briefs and exhibits. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for a period of disability and disability insurance benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**; Defendant's Motion for Summary Judgment is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Roddey filed a Title II application for a period of disability and disability insurance benefits on April 26, 2016, alleging disability beginning August 2, 2014, which he later amended to claim that his disability onset date was August 18, 2015. His claim was denied at the initial level on May

---

[1] Andrew M. Saul is now the Commissioner of Social Security and is substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

12, 2016 and upon reconsideration on August 29, 2016. (Tr. 16). He had a hearing before ALJ Randall D. Huggins (the "ALJ") who denied the application in a decision on August 22, 2017. (Tr. 16-27). Roddey then filed for a review of the ALJ's decision with the Appeals Council, which denied review on February 2, 2018. (Tr. 1-6). The ALJ's decision stands as the final decision of the Commissioner, and Roddey has now requested judicial review in this Court pursuant to 42 U.S.C. § 405(g).

For the reasons stated below, the Court affirms the decision of the Commissioner.

## II. THE COMMISSIONER'S DECISION

The ALJ used the required five-step sequential evaluation process established by the Social Security Administration to determine if Roddey had a "disability" under the law during the relevant period.[2] The Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

*Radford v. Colvin*, 734 F.3d 288, 290-91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof in the first four steps. *Pearson v. Colvin,* 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite her limitations. *See id.*; *see also* 20 C.F.R. § 416.960(c)(2) (explaining that the

---

[2] For the purposes of title II of the Act, "disability" means "the inability to do any substantial gainful activity [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

2

Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do").

The ALJ found at step one of the sequential evaluation that Plaintiff had not engaged in SGA during the period from his amended alleged onset date of August 18, 2015 through the date of his decision.³ (Tr. 16). At step two, the ALJ determined that Plaintiff had severe, medically determinable impairments, specifically, "obesity; sleep apnea; status post left femur fracture and open reduction internal fixation; bilateral knee impairments; mild bilateral degenerative joint disease of the hips; tinnitus; headaches; mild neurocognitive disorder due to traumatic brain injury and depression." (Tr.18).

The ALJ then found at step three that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 19-21). In so concluding, the ALJ discussed in detail why Roddey's impairments did not meet the requirements of Listing 1.02 ("there is no evidence of an inability to perform fine and gross movements effectively nor an inability to ambulate effectively"), Listing 3.00 ("The claimant's sleep apnea does not meet any of these listings. The claimant does not have forced vital capacity (FVC) or forced expiratory volume (FEVl) testing indicating listing level severity. The claimant has not had to be hospitalized for this condition … ") or Listings 12.04 and 12.06 related to his mental impairments (the mental impairments did not "result in at least one extreme or two marked limitations in a broad area of functioning; rather, Roddey had at most "moderate" limitations in several areas. Further, he did not show a medically documented history of at least 2 years duration, consisting of medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is

---

³ Plaintiff remains insured through December 31, 2020 so his last insured date has not yet passed.

3

ongoing and diminishes the symptoms of mental disorder such that there is minimal capacity to adopt to changes in environment or demands not already part of daily life).[4]

After step three, the ALJ determined Roddey's residual functional capacity ("RFC") and discussed at length why he came to that conclusion. (Tr. 21-25). The ALJ found that Roddey had the RFC to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: requires an assistive device such as a cane to stand, walk and/or balance while being able to remain on task at a sedentary work station; occasional pushing/pulling with the bilateral lower extremities to the same extent he is able to lift/carry; occasional climbing of ramps or stairs; never climbing ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching or crawling; avoid concentrated exposure to loud noise, vibration, unprotected heights, moving mechanical parts and bright lights (defined as light brighter than standard office lighting); limited to simple work related instructions and directions; limited to simple, routine tasks, but not at a production rate pace (e.g. assembly line work); capable of sustaining concentration and pace for two-hour segments during a standard eight-hour workday; limited to occasional contact with supervisors, coworkers and the public; capable of responding appropriately to routine changes in an unskilled work setting.

(Tr. 21).

The ALJ then found at step four that Roddey is unable to perform his past relevant work in building maintenance and as a machinist because he is currently limited to a reduced range of sedentary work. (Tr. 26). Finally, at step five, the ALJ found that Plaintiff — given his age (36), high school education, work experience and RFC — could perform jobs that existed in significant

---

[4] The ALJ also considered the potential impact of obesity in causing or contributing to co-existing impairments as required by SSR 02-1p. There are no Listing criteria specifically related to evaluation of obesity impairments, but the ALJ considered Roddey's obesity in connection with his other impairments when formulating the limitations of his residual functional capacity. (Tr. 19).

numbers in the national economy, such as a "surveillance system monitor," "stuffer," and "paster." (Tr. 26-27). Accordingly, the ALJ concluded that Roddey "has not been under a disability, as defined in the Social Security Act, at any time from August 18, 2015, the alleged onset date, through [August 22, 2017, the date of the ALJ's decision]." (Tr. 27).

### III. LEGAL STANDARD

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

5

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith*, 795 F.2d at 345; *Blalock*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION

Roddey raises three arguments in requesting that this Court remand his claim for further consideration. First, he argues that the ALJ's decision cannot stand because the ALJ was improperly appointed in violation of the "Appointments Clause" of the United States Constitution. Second, he asserts that the ALJ failed to satisfy the requirements of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). And, finally, he claims that the ALJ failed to give proper weight to the Department of Veterans Affairs' finding that Roddey was 100% disabled.

### A. The Appointments Clause

Based on the authority of *Lucia v. SEC*, 138 S.Ct. 2044 (2018), which found that certain Administrative Law Judges of the Securities and Exchange Commission are "officers of the United States" subject to the Appointments Clause of the U.S. Constitution, Plaintiff argues that the ALJ's decision denying his social security claim should be remanded because the ALJ had not been constitutionally appointed. *Id*. at 2055. ("So what relief follows? This Court has held that the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed official.'")

However, Defendant argues in response that in *Lucia* the Supreme Court specifically limited the entitlement of a party to relief to those "who make[] a timely challenge to the

6

constitutional validity of the appointment of [the] officer who adjudicates his case … ." *Id*. Therefore, according to Defendant, because Roddey failed to object to the ALJ's appointment at any time in the administrative proceedings below he cannot challenge the appointment of the ALJ in this Court. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (holding that parties may not wait until they are in court to raise a statutory "defect in the . . . appointment" of the official who issued the agency's initial decision); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012) (plaintiff required to exhaust constitutional claim to administrative agency before seeking review in federal court).

The Court agrees with the Defendant that Roddey's "Appointments Clause" claim has been forfeited by his failure to raise the issue earlier.[5] A constitutional challenge under the Appointments Clause is "nonjurisdictional," and thus a party may forfeit its Appointments Clause argument by failing to raise it. *See, e.g.*, *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 795, 798 (8th Cir. 2013); *see also, e.g.*, *Freytag v. Commissioner*, 501 U.S. 868, 878-79 (1991); *id.* at 893-94 (Scalia, J., concurring in part) ("Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review. A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial.").

Indeed, after *Lucia*, a number of courts have found that a challenge to the appointment of an SSA ALJ must be raised in the administrative proceedings in order to preserve it for judicial review. *See, e.g.*, Order at 3, *Garrison v. Berryhill*, No. 1:17-cv-00302-FDW (W.D.N.C. Oct. 10, 2018), ECF No. 24; Order at 55-56, *T. v. Comm'r of Soc. Sec'y Admin.*, No. 1:17-cv-00650-RGV (N.D. Ga. Sept. 28, 2018), ECF No. 17; Order at 5, *Williams v. Berryhill*, No. 2:17-cv-87-KS-MTP

---

[5] Therefore, the Court need not address and expresses no opinion on the merits of Plaintiff's Appointments Clause argument.

(S.D. Miss. Sept. 28, 2018), ECF No. 24; *Davidson v. Comm'r of Soc. Sec'y*, No. 2:16-cv-00102, 2018 WL 4680327, at *2 (M.D. Tenn. Sept. 28, 2018); *Stearns v. Berryhill*, No. C17-2031-LTS, 2018 WL 4380984, at *5-6 (N.D. Iowa Sept. 14, 2018); *Iwan v. Comm'r of Soc. Sec'y*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018) ("Because Iwan did not raise her Appointments Clause challenge before the ALJ or Appeals Council, the court finds that she has waived this issue."); *Hugues v. Berryhill*, No. CV 17-3892-JPR, 2018 WL 3239835, at *2 n.2 (C.D. Cal. July 2, 2018) ("To the extent *Lucia* applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings.").

That these cases consistently find a waiver and forfeiture under these circumstances is not surprising. It is manifestly fair to all the parties and critical for the efficiency of the Social Security administrative process to require a claimant to raise all issues – in particular issues related to the authority and legitimacy of the hearing officer – as early as the challenge can be made so that if necessary the claim can be handled by a different officer. Plaintiff is not entitled to sit on his hands, see how the ALJ rules on his claim and then, when he is disappointed with the decision, raise the issue for the first time in his District Court appeal. In sum, common sense notions of both fairness and efficiency strongly counsel against allowing a Plaintiff to raise a constitutional challenge to the appointment of an ALJ for the first time on appeal to the District Court.

Therefore, the Court finds that Roddey has waived and forfeited his constitutional claim that the ALJ was not properly appointed and declines his request to remand the case on that ground. *See Lucia*, 138 S. Ct. at 2055; *L.A. Tucker*, 344 U.S. at 37 ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.").

B. *Mascio v. Colvin*

Next, Roddey argues that the ALJ's hypothetical questions to the vocational expert and "the language used in his adverse opinion"[6] do not comply with the standards established in *Mascio v. Colvin*. The Court disagrees and finds that the ALJ's decision and RFC is supported by substantial evidence.

The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R §§ 404.1546(c) & 416.946(c). In formulating a RFC, the ALJ is not required to discuss each and every piece of evidence. *See Reid v. Comm'r of Soc. Sec.,* 769 F.3d 861, 865-66 (4th Cir. 2014). In making that assessment, the ALJ, however, must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling (SSR) 96-8p at *2. A "function-by-function" analysis is not, however, an absolute requirement to be applied in all circumstances.

Plaintiff alleges that the ALJ's RFC does not comply with *Mascio* because the ALJ found plaintiff "at most" had moderate difficulties with concentration, persistence, and pace (Tr. 20) and restricting plaintiff to "simple, routine tasks" "not at a production rate pace (e.g. assembly line work)" (Tr. 21) is allegedly insufficient under *Mascio* to account for these moderate difficulties.

First, contrary to Plaintiff's argument, *Mascio* does not stand for the proposition that remand is automatically warranted when an ALJ finds a moderate limitation in CPP but fails to provide a detailed analysis of a plaintiff's ability to stay on task. *Holbrook v. Berryhill*, 2018 WL 325244, at *4, No. 3:16-cv-00713 (W.D.N.C. Jan. 8, 2018). So long as an ALJ's RFC assessment

---

[6] Plaintiff's brief is unclear about what "language" of the ALJ's decision is being challenged. Because the earlier portion of Plaintiff's argument in this section of his brief concerns the Plaintiff's testimony at the hearing, the Court will construe this argument as a challenge to the ALJ's finding that Plaintiff's testimony concerning his pain and limitations should not be fully accepted.

is supported by substantial evidence in the record, and other inadequacies in the ALJ's decision do not frustrate meaningful review, an ALJ has met his *Mascio* duty. *Mascio*, 780 F.3d at 636 ("[R]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."). Remand for lack of discussion is appropriate only if the ALJ's opinion is "'sorely lacking' in a manner that 'frustrates meaningful review.'" *Hubbard v. Berryhill*, No. 3:17-CV-677, 2018 WL 3744017, at *6 (W.D.N.C. Aug. 7, 2018) (quoting *Ponder v. Berryhill*, 2017 WL 1246350, at *4 (W.D.N.C. Mar. 31, 2017)).

The ALJ's detailed opinion discusses at length his analysis of Roddey's functional ability to perform sedentary work with the restrictions incorporated into the RFC and otherwise allows for meaningful review. Also, the ALJ not only restricted plaintiff to non-production tasks, but also affirmatively found in the RFC that plaintiff was "capable of sustaining concentration and pace for two-hour segments during a standard eight-hour workday" (Tr. 21). Therefore, the ALJ fully complied with *Mascio*, in which, unlike in this case, the ALJ gave no mention of plaintiff's ability to remain on task. *Mascio*, 780 F.3d at 638.

Further, even if the ALJ had not expressly found that plaintiff in this case could stay on task for two-hour segments, a restriction to non-production paced work may itself satisfy *Mascio*. *See Morris v. Berryhill*, No. 3:16CV587, 2017 WL 4112365 at *10 (E.D. Vir. August 30, 2017); *Eastwood v. Colvin*, 2016 WL 805709, at *4 (E.D. Va. Feb. 12, 2016) (holding that the ALJ accounted for the plaintiff's limitations in concentration, persistence and pace by limiting her to (1) few workplace changes, (2) little independent decision-making and (3) less than an assembly line pace); *Massey v. Colvin*, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015) (distinguishing *Mascio* because the ALJ's hypothetical limited the plaintiff's exposure to noise; contact with the

public, co-workers and supervisors; changes in his work environment; and, his production pace); *Grant v. Colvin*, No. 1:15-515, 2016 WL 4007606 at *9 (M.D.N.C. September 26, 2016) (weight of authority in the circuits addressing *Mascio* supports the view that a non-production restriction sufficiently accounts for plaintiff's moderate restriction in concentration, persistence or pace); *Linares v. Colvin*, No. 5:14CV120, 2015 WL 4389533 at *4 (W.D.N.C. July 17, 2015) (distinguishing *Mascio* by holding that the ALJ properly accounted for limitations in concentration, persistence, and pace by limiting plaintiff to a non-production pace and restricting her to a stable work environment). Accordingly, the Court finds no reversible error with respect to the ALJ's formulation of the RFC.

In addition, the Court finds that there is substantial evidence to support the ALJ's finding that the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record. For example, during the relevant period, the claimant reported increased knee pain that he attributed to walking half a mile through the woods with slope to go fishing with his son. This is consistent with at least an ability to perform the walking requirements of sedentary work with an assistive device. Further, Roddey testified to an ability to drive short distances; independently complete household errands, such as shopping; help care for two school-aged boys in the home and play games requiring concentration.

Roddey's musculoskeletal impairments resulted in large part from a motor vehicle accident in 2005. Afterwards, he was able to work at the level of substantial gainful activity with the impairments sustained in the motor vehicle accident. In 2007, eight years before the alleged onset date, the claimant's knee was described as well-healed with good alignment, screws in appropriate position and no significant joint space narrowing. His physicians

reported the pain was managed with Naproxen and Vicodin and that the claimant remained functional and therefore surgery was not recommended. Later evaluations showed both normal imaging and mild to moderated degenerative changes to his knees and hips.

Again, it is not for the Court to independently weigh the medical evidence to determine if it would reach a different conclusion than the ALJ. Rather, the Court's role is only to determine if there is "substantial evidence" to support the ALJ's conclusion. Based on the evidence discussed above as well as the other evidence of record referenced by the ALJ, the Court finds there is substantial evidence to support the ALJ's findings and conclusions with respect to his evaluation of Roddey's testimony and allegations and how they would affect his ability to work.

### C. The Department of Veterans' Affairs Disability Finding

Plaintiff's final challenge to the ALJ's decision is his allegation that the ALJ improperly determined that the Department of Veterans' Affairs ("VA") finding that Roddey is 100% disabled is not entitled to "substantial weight," as required by *Bird v. Commissioner of Social Security*, 699 F. 3d 337 (4th Cir. 2012). The ALJ specifically considered the VA's disability finding and *Bird* in his decision, writing:

> The undersigned considered the VA determination in light of *Bird v. Commissioner of Social Security,* 699 F. 3d 337 (4th Cir. 2012). Under *Bird,* the undersigned must give the VA's disability determination "substantial weight." *Bird,* 699 F.3d at 343. However, the undersigned may afford the VA rating less weight so long as the decision explicitly details the reasons for discrediting the VA rating and the "record before the Administrative Law Judge clearly demonstrates that such a deviation is appropriate." *See Bird,* 699 F.3d at 343. In this case, the VA has assessed the claimant with a 100% total and permanent disability rating due to a traumatic brain injury with cognitive disorder as of October 2014 (ID). Additional VA ratings involve sleep apnea and musculoskeletal impairments assessed in 2006 (ID). The undersigned affords the sleep apnea and musculoskeletal ratings significant weight; however, the claimant demonstrated an ability to work at the level of substantial gainful activity since sustaining the traumatic brain injury in 2005. Accordingly, the undersigned finds the cognitive disorder does not preclude the claimant's ability to perform the basic mental aptitudes of unskilled work. Determinations by other

agencies are not binding on the Social Security Administration as they rely on different regulatory criteria to make their determinations… .

Based on this analysis and the full discussion of Roddey's medical history, limitations and activities reflected in the remainder of the ALJ's decision, the Court finds that the ALJ complied with *Bird* and the other authority cited by Roddey.[7] Thus, the ALJ's decision should not be reversed or remanded on the ground that the ALJ did not properly consider the VA's disability finding.

## IV. CONCLUSION

A reasonable mind would find that the evidence is adequate to support the ALJ's decision. The decision of the ALJ, therefore, is hereby **AFFIRMED,** Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED.**

Signed: November 6, 2019

Kenneth D. Bell
United States District Judge

---

[7] Also, as a matter of regulatory law, VA disability determinations are not binding upon the Social Security Administration. See 20 C.F.R. §§404.1504, 416.904 ("a determination made by another agency that you are disabled . . . is not binding on [the Social Security Administration]").